**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 30 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-5919 |
| Plaintiff - Appellee, | D.C. No. 5:22-cr-00251-EJD-1 |
| v. | |
| BRIAN BRODERICK, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Submitted April 24, 2026[**]
San Francisco, California

Before: GOULD, NGUYEN, and BENNETT, Circuit Judges.

Appellant Brian Broderick challenges his conviction for transmitting a communication containing a threat to injure in violation of 18 U.S.C. § 875(c). "We review a district court's evidentiary rulings for abuse of discretion." *United States v.*

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*Perez*, 962 F.3d 420, 434 (9th Cir. 2020). When "considering a challenge to a conviction based on sufficiency of the evidence," we view all evidence presented at trial "in the light most favorable to the prosecution," presuming "that the trier of fact resolved" all conflicting inferences "in favor of the prosecution," and deferring to that resolution. *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). And we will uphold the conviction if "this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). But in criminal threat cases, we also "conduct an independent review of the record to determine whether the facts as found by the jury establish the core constitutional fact" as to whether the defendant's speech constituted a true threat. *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002); *see also Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1070 (9th Cir. 2002) (en banc) ("We will consider the undisputed facts as true, and construe the historical facts, the findings on the statutory elements, and all credibility determinations in favor of the prevailing party."). Applying these standards, we **AFFIRM** Broderick's conviction.

1. Broderick waived the issue of whether it was proper to exclude Dr. Greene's testimony based on Broderick's refusal to submit to a psychiatric assessment by a government expert. "An appellate court will not consider issues not

properly raised before the district court," and "[t]he 'withdrawal of an objection is tantamount to a waiver of an issue for appeal.'" *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999) (quoting *Slaven v. Am. Trading Transp. Co.*, 146 F.3d 1066, 1069 (9th Cir. 1998)).

Here, Broderick timely provided notice of his intent to introduce Dr. Greene's expert testimony under Federal Rule of Criminal Procedure ("Rule") 12.2(b). The prosecution then moved for an order allowing a "mental health professional designated by the government [to] conduct an examination of defendant Brian Broderick and provide a report of the examination to the Court and the parties" under Rule 12.2(c)(1)(B). But before the court could rule on the government's motion, Broderick withdrew his 12.2(b) notice, thus withdrawing his "intent to introduce expert evidence regarding his mental condition." Broderick also requested that the court "deny the Government's motion for evaluation under Rule 12.2 as moot." Accepting that request, the district court denied the government's motion as moot.

By withdrawing his 12.2(b) notice and successfully requesting that the court deny the government's examination motion as moot, Broderick effectively waived his challenge to the exclusion of Dr. Greene's testimony. This is because the trial court could not rule on the mooted motion to order an examination. *See Arizona v. Components Inc.*, 66 F.3d 213, 217 (9th Cir. 1995) ("Although there is no bright-line rule to determine whether a matter has been raised below, 'a workable

standard . . . is that the argument must be raised sufficiently for the trial court to rule on it.'" (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989))); *see also United States v. Macias*, 789 F.3d 1011, 1017 n.3 (9th Cir. 2015) (holding we have discretion to find waiver even where appellee has "fail[ed] to assert it").

2. The district court did not "err[] by preventing [Broderick's therapist] Mr. Mailes from testifying about 'any observations made as the result of his training as a therapist' or 'any instance whereby [Broderick]'s behavior led Mr. Mailes to any medical conclusion based on his training as a therapist.'" Broderick moved to admit Mailes as a lay witness, so the district court allowed Mailes to "testify as a lay witness as to his observations of [Broderick]'s behavior using language which is commonly understood as lay nomenclature, such as paranoid and delusional." The basis of such an "opinion is 'just familiarity with the subjects,'" so "it is proper lay opinion under [Federal] Rule [of Evidence] 701." *See United States v. Holmes*, 163 F.4th 547, 560 (9th Cir. 2025) (quoting *Perez*, 962 F.3d at 437). On the other hand, testimony based on Mailes's specialized training as a Licensed Marriage and Family therapist, including observations, diagnoses, or medical conclusions made on that basis, or the use of language "which would suggest a diagnosis," would rely on Mailes's "technical or specialized knowledge" rather than "just familiarity with the subjects" or solely matters he "personally observe[d]," and therefore fall outside the scope of lay witness testimony. *See id.*

24-5919

Nor did the district court err by ruling that Mailes could not identify himself as Broderick's therapist or testify about "any information which would reveal to the jury his role as [Broderick]'s treating therapist." Identifying Mailes as Broderick's therapist would risk lending an air of expertise to his lay testimony that Broderick appeared delusional and paranoid, which the district court was concerned to prevent. Under the broad latitude a district court enjoys to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury," Fed. R. Evid. 403, the district court did not abuse its discretion.

3. Though the First Amendment generally bars the regulation of speech, there is an exception for the regulation of true threats, or "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). To qualify as a true threat in criminal cases, the "speech must meet both" an objective and a subjective test. *Boquist v. Courtney*, 32 F.4th 764, 781 n.6 (9th Cir. 2022). We reject Broderick's First Amendment challenge because the speech at issue satisfies both tests.

The objective test "depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (quoting *Elonis v. United States*, 575 U.S. 723,

733 (2015)).  We must therefore "consider 'the surrounding events and reaction of the listeners.'"  *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021) (quoting *Planned Parenthood*, 290 F.3d at 1075).  And we must ask if "the statement would be understood by people hearing or reading it in context as a serious expression of an intent to kill or injure."  *See United States v. Bagdasarian*, 652 F.3d 1113, 1118 (9th Cir. 2011).

The portion of the email to Agent Stone charged as a threat in Count 2 of the superseding indictment threatened as follows: "[Y]ou have already failed.  You act on this in a 24 hours [sic] or I go beyond taking your livelihood."  In the portion of that email charged as a threat in Count 1, Broderick stated that he was "literally hunting an idiot traitor named Special Agent Christopher Salazar."  The forwarded email to SAC Fair stated: "America crushes traitors and we will leave their lives as totally mangled as I'm about to leave yours.  You are done, Craig."  It also accused Agent Salazar of "participating in a contract killing service being organized by a former FBI agent."

The email to Agent Stone included a link to Broderick's YouTube channel, to which he posted "a video where he filmed people coming and going from the FBI's office," narrating that he was "surveilling the FBI because they don't work hard enough," and identifying a man entering the building as Agent Salazar "who he also called a 'piece of trash.'"  Other videos Broderick had posted to his YouTube

6                                                                    24-5919

channel discussed "all the weaponry I have" including "consumer firearms" and "homemade stuff"; stated "Yesterday's reconnaissance was promising. Los Angeles would be a good site to direct an insurgency"; and revealed that Broderick had acquired bulletproof clothing for use "if I'm doing an assault."

A reasonable person in Agent Stone's shoes, reviewing these materials, would understand Broderick's email to him as a serious expression to kill or injure. And Agent Stone appears to have taken it that way. He testified at trial that he "took it as a threat" and reported it to FBI investigators. He also "took steps to protect [his] own safety and the safety of [his] family."[1]

Agent Salazar had broader context than Agent Stone. In addition to these messages, Agent Salazar had also been receiving aggressive and inappropriate emails from Broderick for weeks. One of these emails included a statement that Broderick had "wiretapped" Agent Salazar's coworkers. Another accused Agent Salazar of attempted murder. Regarding the portion of email that was the subject of Count 1 of the superseding indictment, which, as noted, stated that Broderick was "literally hunting an idiot traitor named Special Agent Christopher Salazar," Agent Salazar testified that his "interpretation of this email is that Mr. Broderick is an American who is literally hunting me." He "felt threatened" when he received it.

---

[1] When the prosecution asked "what were those" actions, the defense objected, and the district court instructed "Not specifics. In generality. He can answer in generalities."

He reported the email to his FBI supervisor and "spoke with the supervisor of the SWAT team." He then "called his girlfriend . . . who was living with" him and "let her know to, per [his] conversation with the SWAT supervisor, to lock all of the doors, close the windows, do not take the dogs or the dog out, to wait until [he] was home and not to answer the door for anybody." Regarding the video in which Broderick films a man he identifies as Agent Salazar, Agent Salazar testified, "He claims to have seen me. That's worrisome."

"[C]onsider[ing] 'the surrounding events and reaction of the listeners,'" *Thunder Studios*, 13 F.4th at 746 (quoting *Planned Parenthood*, 290 F.3d at 1075), reasonable people receiving these messages would have understood Broderick's communications directed at Agents Stone and Salazar as threatening violence.

The subjective test depends on "whether the speaker subjectively intended to threaten violence." *Boquist*, 32 F.4th at 781 n.6. The standard for intent in this context is recklessness. *Counterman*, 600 U.S. at 79. "That standard involves insufficient concern with risk, rather than awareness of impending harm." *Id.* "In the threats context, it means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* (quoting *Elonis*, 575 U.S. at 746 (Alito, J., concurring in part and dissenting in part)). Here, the statement "I am literally hunting an idiot traitor" *could* be understood by others

as stating a literal hunt, and that a threat to "go beyond taking your livelihood" *could* be understood as a threat to injure or kill.

Broderick describes himself as "obviously intelligent," and states that "'except for the delusions and their behavioral ramifications,' a person suffering from a delusional disorder 'does not appear odd and is not functionally impaired.'" On this record, we find evidence from which the jury could conclude that Broderick was aware that others could regard his statements as threatening violence and that his speech therefore satisfies the subjective test. For the same reason, we reject Broderick's argument that the district court erred in denying his motion for acquittal because no rational jury could have found beyond a reasonable doubt that he "recklessly disregarded the likelihood that his statements would be taken as threats of physical violence."

**AFFIRMED.**