NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br><br>MARCOS ALONZO NIETO and<br>HILDY JEAN ORTIZ,<br><br>           Debtors.<br>_____ | BAP Nos.  EC-11-1607-DJuKi<br>            EC-11-1619-DJuKi<br>            EC-11-1643-DJuKi<br>            EC-12-1015-DJuKi<br><br>Bk. No.   11-26173 |
| In re:<br><br>HARVEY P. MICKELSEN and<br>STEPHANIE B. MICKELSEN,<br><br>           Debtors.<br><br>_____ | BAP Nos.  EC-11-1613-DJuKi<br>             EC-12-1017-DJuKi<br>             EC-12-1018-DJuKi<br>             EC-12-1019-DJuKi<br><br>Bk. No.   09-42649 |
| In re:<br><br>BEN LEANDO DYE and KAELYN<br>MARIE DYE,<br><br>           Debtors.<br>_____ | BAP Nos.  EC-11-1641-DJuKi<br>             EC-12-1016-DJuKi<br><br>Bk. No.   11-22020 |
| JAMES PATRICK CHANDLER; SEAN<br>GJERDE,<br><br>           Appellants,<br><br>v.<br><br>J. MICHAEL HOPPER, Trustee;<br>JAN P. JOHNSON, Chapter 13<br>Trustee; AUGUST BURDETTE<br>LANDIS, Acting United States<br>Trustee; MARCUS ALONZO NIETO;<br>HILDY JEAN ORTIZ; HARVEY P.<br>MICKELSEN; STEPHANIE B.<br>MICKELSEN; BEN LEANDO DYE;<br>KAELYN MARIE DYE; MICHAEL G.<br>PETERS; JENNIFER PETERS,<br><br>           Appellees.<br>_____ | **M E M O R A N D U M**[1] |

---

[1]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (<u>see</u> Fed. R. App. P. 32.1), it has no precedential value. <u>See</u> 9th Cir. BAP Rule 8013-1.

Argued and Submitted on October 19, 2012
at Sacramento, California

Filed - December 6, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Chief Bankruptcy Judge, Presiding

Appearances:    Appellant James Patrick Chandler, appeared in pro
                per; Appellant Sean Gjerde appeared in pro per;
                Kristen A. Koo appeared for Appellee Jan P.
                Johnson, Chapter 13 Trustee; Antonia G. Darling
                appeared for Appellee, August B. Landis, Acting
                United States Trustee.

Before:  DUNN, JURY, and KIRSCHER, Bankruptcy Judges.

What all parties anticipated would be a relatively straightforward no asset chapter 7[2] case spawned litigation resulting in ten judgments in three different bankruptcy cases now before the panel on appeal, all of which relate in some fashion to sanctions against the debtors' counsel and his partner. Because the judgments were entered on a default basis, and because neither appellant sought relief from the default judgments from the bankruptcy court in the first instance, we DISMISS each of these appeals.

/ / /

/ / /

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

## I.  FACTUAL BACKGROUND

A.  <u>Setting the Stage: Bankruptcy Court Matters October 19, 2009 Through April 18, 2011</u>.[3]

Harvey P. and Stephanie B. Mickelsen paid Attorney Sean P. Gjerde $2,000 to file a chapter 7 bankruptcy petition on their behalf, which he did on October 19, 2009.  Ultimately dissatisfied with the services Mr. Gjerde had performed, the Mickelsens retained substitute counsel ("Substitute Counsel") on February 10, 2010.  The Mickelsens thereafter sent Mr. Gjerde a letter dated May 6, 2010, outlining why they believed he should refund the $2,000 in fees they had paid him.  Mr. Gjerde responded by letter dated May 11, 2010, stating that all problems with the Mickelsens' case were caused by the chapter 7 trustee, Prem N. Dhawan ("Chapter 7 Trustee").  In this letter, Mr. Gjerde expressed his opinion that he did not think the Mickelsens would "get much sympathy from the bankruptcy court," if they brought the matter to its attention.  As their response, the Mickelsens amended their schedules on May 27, 2010 to exempt a claim against Mr. Gjerde.

Substitute Counsel then sent a letter to Mr. Gjerde on June 3, 2010, restating the Mickelsens' request for a refund, and giving Mr. Gjerde explicit notice and opportunity to respond as contemplated by Rule 9011(c).  After Mr. Gjerde failed to respond, on July 21, 2010, Substitute Counsel filed a Motion to

---

[3]  A substantial portion of this Memorandum sets out facts prior to the events actually involved in the pending appeals.  Nevertheless, the historic facts are important to a full understanding of these appeals.

-3-

Disgorge Legal Fees ("Motion to Disgorge") and set the matter for hearing to be held August 31, 2010 ("August 31 Hearing"). The Motion to Disgorge sought the disgorgement of the attorneys fees the Mickelsens had paid to Mr. Gjerde and an order compelling Mr. Gjerde to pay the attorneys fees of Substitute Counsel required to "repair [the] damage caused by [Mr.] Gjerde's incompetent handling of [the Mickelsens'] case."

Mr. Gjerde timely filed his response under the local rules of the Bankruptcy Court for the Eastern District of California ("LBRs") on August 16, 2010. Notwithstanding his opposition to the Motion to Disgorge, Mr. Gjerde did not appear at the August 31 Hearing. At the August 31 Hearing, the bankruptcy court continued the hearing on the Motion to Disgorge to September 28, 2010 ("September 28 Hearing") and directed Substitute Counsel to provide Mr. Gjerde notice of the September 28 Hearing. Substitute Counsel served Mr. Gjerde with notice of the September 28 Hearing via email and certified mail on August 31, 2010, and via telecopier and regular mail on September 1, 2010. Substitute Counsel filed a declaration of service with the bankruptcy court on September 3, 2010.

Mr. Gjerde did not appear at the September 28 Hearing. However, Mr. Gjerde ostensibly was represented at the September 28 Hearing by attorney Matthew Pearson, who reported he was appearing on behalf of Mr. Gjerde. The record suggests that Mr. Pearson did not represent to the bankruptcy court at the September 28 Hearing that he was acting as Mr. Gjerde's counsel. Following the conclusion of the September 28 Hearing, on October 5, 2010, the bankruptcy court entered on the docket an

-4-

unsigned civil minute order ("Minute Order"). The Minute Order provided: "Findings of fact and conclusions of law having been stated orally on the record and good cause appearing. IT IS ORDERED that the motion is granted, fees disgorged in the amount of $2,000."

Substitute Counsel served the Minute Order on Mr. Gjerde via telecopier, certified U.S. Mail, and First Class U.S. Mail, all on October 7, 2010. Included with the Minute Order was a letter ("Demand Letter") from Substitute Counsel requesting that Mr. Gjerde send a check payable to the Mickelsens in care of Substitute Counsel. Mr. Gjerde responded to the Demand Letter on October 7, 2010, taking the position that because the Minute Order did not refer to him by name, he intended to ignore it. He also demanded that Substitute Counsel not contact him again because he was represented by counsel, although Mr. Gjerde did not state who was serving as his counsel. Substitute Counsel then sent, via telecopier, e-mail, and U.S. Mail, a copy of the Minute Order and a letter requesting the disgorged fees to Mr. Pearson on October 8, 2010, and when no response was received, began calling Mr. Pearson's office on October 21, 2010, to inquire regarding the status of payment of the disgorged fees. Despite leaving five voice mail messages requesting a return telephone call, Substitute Counsel received no call from Mr. Pearson.

On November 3, 2010, Substitute Counsel filed a Motion to Compel Sean P. Gjerde to Comply with Court Order and/or for Coercive Contempt Sanctions ("Motion to Compel"), and set the matter for hearing to be held November 23, 2010 ("November 23

-5-

Hearing"). The Motion to Compel sought an order compelling Mr. Gjerde to disgorge the attorneys fees the Mickelsens had paid him and the attorneys fees the Mickelsens had incurred for the services performed by Substitute Counsel. The Motion to Compel also sought an order granting coercive contempt sanctions against Mr. Gjerde until he complied with the Minute Order. Substitute Counsel served both the Motion to Compel and a notice of hearing on the Motion to Compel on Mr. Gjerde and Mr. Pearson via first class mail on November 3, 2010.

Under the LBRs, because the motion was set for hearing on less than 28 days' notice, Mr. Gjerde had until the time of the November 23 Hearing to file or to present his opposition to the Motion to Compel. See LBR 9014-1(f)(2)(C). Mr. Gjerde neither filed an opposition nor appeared at the November 23 Hearing to present one.

At the conclusion of the November 23 Hearing, an unsigned civil minute order ("Second Minute Order") was entered on the bankruptcy court docket. The Second Minute Order provided: "Findings of fact and conclusions of law having been stated orally on the record and good cause appearing. IT IS ORDERED that the motion is granted. IT IS FURTHER ORDERED, Sean Gjerde (California State Bar 217467) shall appear before the undersigned Judge on December 14, 2010 at 9:30 a.m., to explain why he has not complied with this Court's order. FURTHER: Chambers to issue Order to Show Cause regarding electronic filing privileges."

On November 24, 2010, the bankruptcy court entered its Order to Appear ("Show Cause Order"), which provided:

-6-

> IT IS ORDERED that Sean P. Gjerde (State Bar No. 217467) shall appear before the undersigned judge on December 14, 2010, at 9:30 a.m. and explain why he has not complied with this court's order to disgorge $2,000 pursuant to 11 U.S.C. § 329.
>
> IT IS FURTHER ORDERED that Mr. Gjerde shall show cause why his electronic filing privilege should not be terminated.

The deputy clerk's certificate of service attached to the Show Cause Order states that on November 29, 2010, she served the Show Cause Order by placing true and correct copies in postage paid envelopes addressed to Mr. Gjerde and to Substitute Counsel and by depositing the envelopes in the U.S. Mail or by placing the copies in an interoffice delivery receptacle located in the Clerk's Office.

Mr. Gjerde did not appear at the hearing on the Order to Show Cause. At the conclusion of the hearing on the Order to Show Cause, an unsigned civil minute order ("Third Minute Order") was entered on the bankruptcy court docket on December 14, 2010. The Third Minute Order provided: "Findings of fact and conclusions of law having been stated orally on the record and good cause appearing. The Court finds Mr. Sean P. Gjerde held in contempt of court." The Third Minute Order directed that an order be prepared by Chambers.

On January 10, 2011, the bankruptcy court entered its Order of Contempt ("Contempt Order"), which states in its entirety:

> Sean P. Gjerde having failed to explain why he has not disgorged $2,000 as ordered by this court on October 5, 2010, which order has not been appealed by Sean P. Gjerde or the Northern California Law Center, and having failed to appear before the undersigned on December 14, 2010,
>
> IT IS ORDERED that Sean P. Gjerde is held in contempt of court.

-7-

IT IS FURTHER ORDERED that all filing privileges of Sean P. Gjerde, Northern California Law Center, or any attorney associated with Northern California Law Center are revoked.

IT IS FURTHER ORDERED that no case may be filed in the Eastern District of California by Sean P. Gjerde, Northern California Law Center, or any attorney associated with Northern California Law Center without prior permission from the Chief Judge of this court.

The deputy clerk's certificate of service attached to the Contempt Order states that on January 11, 2011, she served the Contempt Order by placing true and correct copies in postage paid envelopes addressed to Mr. Gjerde and to Substitute Counsel and by depositing the envelopes in the U.S. Mail or by placing the copies in an interoffice delivery receptacle located in the Clerk's Office.

The next day, Mr. Gjerde directed a letter to the attention of the bankruptcy judge who issued the Contempt Order. In this letter, Mr. Gjerde asserted that his primary problem with the Minute Order was the correct amount. He asserted he should not have been required to disgorge $2,000, when only $1,701 was paid for or on account of his attorneys fees. The remaining $299 was paid to him by the Mickelsens as the court filing fee in the case, and he had used the funds for that purpose. Mr. Gjerde stated in the letter that he had offered to pay the $1,701 amount without success, but that he now "would be willing to pay the $2,000 to have my filing privileges reinstated." He explained the hardship the Contempt Order had placed on his other clients. He also informed the bankruptcy court that, absent reinstatement of his filing privileges, "there would appear little reason to pay out this money which I assume was your intention."

-8-

Mr. Gjerde further took the bankruptcy court to task for suspending the filing privileges of Mr. Gjerde's partner, James Chandler, asserting that because Mr. Chandler had no notice of the proceedings, Mr. Chandler's privileges were removed in violation of his due process rights.

The bankruptcy court deemed Mr. Gjerde's letter to be a motion for reconsideration of the Minute Order and the Order of Contempt, and entered a further order on January 14, 2011, which set a hearing on the motion for reconsideration to be held January 25, 2011 ("January 25 Hearing"). When Mr. Gjerde did not appear at the January 25 Hearing, the bankruptcy court continued the hearing to February 1, 2011 ("February 1 Hearing"). Notably, the United States Trustee ("UST") joined in the proceedings beginning with the January 25 Hearing, signaling that broader concerns were developing with respect to Mr. Gjerde's bankruptcy practice. On January 25, 2011, Substitute Counsel served a notice of the February 1 Hearing on Mr. Gjerde via email, telecopier, and first class mail.

Mr. Gjerde did appear at the February 1 Hearing. The civil minutes of the February 1 Hearing reflect only that the hearing was continued to April 5, 2011 ("April 5 Hearing"). What was discussed at the February 1 Hearing we do not know, as we have not been provided a transcript of those proceedings. What is clear from the record that has been presented to us is that after the February 1 Hearing the proceedings expanded significantly in scope.

On March 8, 2011, Substitute Counsel filed a motion ("Prevailing Party Fees Motion"), seeking $6,582.52, an amount

-9-

which purported to represent the reasonable expenses and attorneys fees incurred in presenting the earlier Motion to Compel and participating in the resulting contempt proceedings against Mr. Gjerde. Substitute Counsel scheduled the Prevailing Party Fees Motion to be heard at the April 5 Hearing, and on March 8, 2011, served the Prevailing Party Fees Motion and the notice of its scheduled hearing on Mr. Gjerde via U.S. Mail.

Declarations in support of the underlying Motion for Contempt were filed by Substitute Counsel ("Substitute Counsel Declaration") on March 22, 2011, by the Chapter 7 Trustee ("Chapter 7 Trustee Declaration")(at the direction of the UST) on March 22, 2011, by an assistant UST ("UST Declaration") on March 28, 2011, and by the Chapter 13 Trustee for the Eastern District of California, Sacramento Division ("Chapter 13 Trustee Declaration"). Pared to their essences, the respective declarations stated:

<u>Substitute Counsel Declaration</u> - Substitute Counsel had been attempting since the spring of 2010 to assist the Mickelsens to obtain a refund of the monies they paid in conjunction with their bankruptcy filing. Those funds were paid either to Sean P. Gjerde and Associates, the Law Office of Sean P. Gjerde, or the Northern California Law Center, P.C. ("NCLC"). In May 2010, Mr. Gjerde acknowledged in writing that both he and Mr. Chandler comprised the NCLC. Mr. Gjerde initially took the position that because the Minute Order did not name him personally, it was not directed to him. Beginning in January, 2011, Mr. Gjerde began to assert that notice had not been given to "the firm." Despite Mr. Gjerde's claim to the contrary in his January 12, 2011 letter

-10-

to the bankruptcy court, Mr. Gjerde had made no attempt to meet with Substitute Counsel to resolve the dispute. The last communication Substitute Counsel received from Mr. Gjerde was a letter dated March 9, 2011, which stated that his counsel had advised him not to communicate with the Mickelsens so he would not be able to "resolve the money issue" at that time.

<u>Chapter 7 Trustee Declaration</u> - The UST requested that the Chapter 7 Trustee apprise the bankruptcy court of his experience regarding the quality of Mr. Gjerde's work, and of Mr. Gjerde's attitude in dealing with the issues in the Mickelsens' case.

The Chapter 7 Trustee determined that the Mickelsens had improperly asserted federal exemptions, rather than California state exemptions, in assets. Most significantly, Mr. Gjerde had listed on Schedule B two life insurance policies with a total value of $175,000, and then fully exempted those policies under § 522(d)(7). Mr. Gjerde was unresponsive to the Chapter 7 Trustee's efforts to contact him regarding the improper use of federal exemptions. The failure to cite the proper exemptions required the Chapter 7 Trustee to retain counsel to preserve the bankruptcy estate's interest in the insurance policies.

Following a subsequent request for documentation concerning the insurance policies, Mr. Gjerde asserted the policies had no cash value and offered to amend the Mickelsens' schedules to so reflect. After the Chapter 7 Trustee and his counsel reviewed the insurance policy documentation, they determined that the combined cash surrender value was approximately $22,116.63. The Chapter 7 Trustee requested confirmation of this cash surrender value from the insurance companies. In response, Mr. Gjerde

-11-

filed an amended schedule C asserting $11,070 of the value exempt pursuant to Cal. Code Civ. P. § 703.140(b). Following the filing of the amendment, the Chapter 7 Trustee obtained turnover of the full cash value of the insurance policies from the insurance companies, subject to the Mickelsens' allowed exemption in the amount of $11,070.

Thereafter the Mickelsens retained Substitute Counsel, who amended schedule C to claim the entire life insurance proceeds as exempt under the "wild card exemption." Ultimately, the Chapter 7 Trustee was required to turn over all of the life insurance proceeds to the Mickelsens.

As a second matter, the Chapter 7 Trustee wrote to instruct the Internal Revenue Service ("IRS") to forward the Mickelsens' scheduled (and exempted) 2009 federal income tax refund to the Chapter 7 Trustee. Mr. Gjerde questioned the Chapter 7 Trustee's counsel about the legal authority under which the Chapter 7 Trustee was asserting that the 2009 refund was property of the bankruptcy estate. Chapter 7 Trustee's counsel had to write to Mr. Gjerde to provide the authority.

Finally, the Mickelsens had been involved in a prepetition automobile accident, resulting in (1) a personal injury claim that was neither scheduled nor exempted, and (2) loss of their vehicle which was not disclosed in their Statement of Financial Affairs. A recent sale by the Mickelsens of their prior Arizona residence also was not disclosed in their bankruptcy documents. These errors were corrected by Substitute Counsel.

The Chapter 7 Trustee conducted a total of three § 341(a) meetings in the Mickelsens' case. The first, on November 24,

-12-

2009, was continued by the Chapter 7 Trustee, because Mr. Gjerde failed to appear with the Mickelsens. While Mr. Gjerde's partner, Mr. Chandler, did appear, Mr. Chandler admitted he knew nothing about the Mickelsens' bankruptcy petition, schedules and statement of financial affairs. As a result, the Chapter 7 Trustee believed the Mickelsens were not well represented at the first § 341(a) meeting. Mr. Gjerde did attend the second § 341(a) meeting on December 9, 2009, at which time, Mr. Gjerde misrepresented to the Chapter 7 Trustee that the insurance policies had no cash surrender value. Mr. Gjerde also admitted his lack of experience with bankruptcy matters, leading the Chapter 7 Trustee to continue the § 341(a) meeting again to provide Mr. Gjerde with time to correct problems with the asserted exemptions and to provide additional documentation to the Chapter 7 Trustee.

The Chapter 7 Trustee emphasized that, because of a lack of adequate disclosures, improperly asserted exemptions, and a lack of cooperation and communication from Mr. Gjerde, the Chapter 7 Trustee believed it was necessary to engage legal counsel to assist him in administering the Mickelsens' case.

Mr. Gjerde wrote to the Chapter 7 Trustee and his counsel on February 1, 2010, demanding that the Mickelsens' case be closed, and threatening to file a motion against the Chapter 7 Trustee and his counsel for "holding up this case" and "for wasting the time and resources of the United States, of the Court and of [Mr. Gjerde's] time." The gist of Mr. Gjerde's complaint was that the Chapter 7 Trustee and his counsel were making excessive demands and had no right to all the "needless information"

-13-

requested. In the letter, Mr. Gjerde implied he would file a motion to have the Chapter 7 Trustee removed; Mr. Gjerde had made a similar, more specific, threat in the case of another of his clients also being administered by the Chapter 7 Trustee.

The Chapter 7 Trustee next discussed his experience with Mr. Gjerde in the other case. The Chapter 7 Trustee was appointed in that case on August 29, 2009, following conversion of the case from chapter 13 to chapter 7. In that case, Mr. Gjerde also improperly used federal rather than California exemptions, requiring the Chapter 7 Trustee to retain counsel to object to the exemptions.

In addition, the Chapter 7 Trustee advised Mr. Gjerde that chapter 7 debtors were not authorized to operate a business without court approval and requested that Mr. Gjerde provide evidence of insurance and instruct his clients to close their business. Mr. Gjerde was not responsive. Mr. Gjerde did not appear at the § 341(a) meeting. The substitute attorney who did appear was unfamiliar with the case. At this § 341(a) meeting, the debtors stated under oath that the fair market value of the business was $100,000. The debtors and Mr. Gjerde failed to appear at the continued § 341(a) meeting. Instead, Mr. Gjerde sent correspondence to counsel for the Chapter 7 Trustee, stating that unless the Chapter 7 Trustee concluded the § 341(a) meeting and either closed the case as a no asset case, thereby abandoning the business to the debtors, or agreed to the dismissal of the case, he would file a motion to remove the Chapter 7 Trustee. Ultimately, the bankruptcy court entered an order requiring the debtors to attend a continued § 341(a) meeting; the order also

provided that no discharge would be entered in the case until thirty days after the § 341(a) meeting was concluded.

Rather than comply with any of the requests of the Chapter 7 Trustee, Mr. Gjerde filed a motion to dismiss the case, proposing that the debtors would re-file it at a later date. When advised that the Chapter 7 Trustee intended to object to the dismissal, Mr. Gjerde wrote to the Chapter 7 Trustee and his counsel stating that the Chapter 7 Trustee had no standing to object to dismissal of the case, and that he would take legal action against the Chapter 7 Trustee if the Chapter 7 Trustee objected to dismissal. After the bankruptcy court denied the debtors' motion to dismiss, the debtors retained substitute counsel.

UST Declaration - The UST reviewed the bankruptcy court files of all 77 bankruptcy cases filed in the Eastern District of California by Mr. Gjerde and summarized the issues or problems in those cases. Most notably, the UST stated that in only four of the 77 cases were no "issues seen." Thirty of the cases were chapter 13 cases; only two of those cases reached plan confirmation. Twenty-seven of the cases were dismissed before confirmation, and one case had plan confirmation denied in December, 2010, with no new plan filed as of the date of the UST Declaration. Forty-seven of the cases were chapter 7 cases. Eleven of the cases were dismissed for failure to file documents. Mr. Gjerde either quit or was fired in five of the cases. Twenty-four cases resulted in debtor discharge. One case was closed without a discharge and has not been reopened. Six cases were pending.

The UST chronicled the most common errors and issues seen in

-15-

Mr. Gjerde's filings: incomplete social security number declarations submitted with the petition in 20 cases; no master address list filed with the petition in 15 cases; no Exhibit D and certificate filed with the petition in 25 cases; no plan was filed in 21 chapter 13 cases; Mr. Gjerde failed to appear at least once at a § 341(a) meeting in 10 cases; the § 341(a) meeting was continued in 11 cases for corrections or for late submitted documents; and blank documents were filed in three cases. The UST also pointed out that 14 of the cases were repeat filings where Mr. Gjerde or his firm were counsel in the prior cases as well, but where the prior cases were not listed on the petition.

To ensure that the analysis of Mr. Gjerde's work was fair, the UST also reviewed the cases of two other attorneys in practice since 2008. After setting out the results of that review, the UST concluded that Mr. Gjerde was incompetent to practice law. The UST further stated that Mr. Gjerde had shown no interest in improving his skills, despite being told by many trustees that his work was substandard.

Chapter 13 Trustee Declaration - The Chapter 13 Trustee provided in detail a chronicle of the problems in each of the 17 chapter 13 cases in which he was the trustee and Mr. Gjerde served as counsel for the debtor(s).

Mr. Gjerde filed pleadings in preparation for the April 5 Hearing as follow:

- Sean P. Gjerde's Brief Re: Reconsideration of [the Contempt Order]. Mr. Gjerde asserted that the NCLC accepted $2,000 from the Mickelsens, which constituted a payment of $1,701 toward

attorneys fees and $299 toward the filing fee for the Mickelsens' case. Mr. Gjerde therefore requested that the bankruptcy court modify the Order of Contempt to provide that only $1,701 be disgorged. Mr. Gjerde asserts that on March 22, 2011, he paid the Mickelsens $1,701 by transmitting payment to Substitute Counsel. The ultimate sentence of this brief stated: "With regard to the suspension of filing rights in the [Contempt Order], Gjerde wishes to inform the Court that he is withdrawing from practicing before the Eastern District Bankruptcy Court at this time."

- Sean P. Gjerde's Opposition to Debtors' Motion for Attorneys Fees and Costs. Mr. Gjerde asserted that "it is clear" that Substitute Counsel took the Mickelsens' request for disgorgement of fees "as a 'make-work' project" for which they now sought $6,534 fees and $48.62 costs for a motion that requested disgorgement of only $1,701, making the amount of Substitute Counsel's attorneys fees unreasonable. He complained as to the amount in part because the "case has long been closed and the [Mickelsens] have been discharged for over 6 months." Mr. Gjerde pointed out that because the original Motion to Disgorge contained a request for Substitute Counsel fees that were not granted, it was not appropriate to grant those fees in the context of a separate motion. Finally, he asserted that Substitute Counsel's Declaration "coyly" stated that the fees were supported by a billing report, not that the fees had been, or were expected to be, paid by the Mickelsens.

- Rebuttal of [Substitute Counsel Declaration]. Mr. Gjerde asserted that the Substitute Counsel Declaration supported the

-17-

point he had made from the beginning of the controversy: the Mickelsens hired Sean P. Gjerde, such that any disgorgement order should be directed to Sean P. Gjerde, not to the NCLC. He protested that he had never refused to disgorge the fees paid by the Mickelsens, but rather had repeatedly asserted the order should be directed to him personally and he would disgorge the fees accordingly. He contended that the statement he had made in his initial brief regarding reconsideration of the Contempt Order that "[the NCLC] accepted a total of $2,000 from the Mickelsens" was inaccurate, because the money was paid to him. He stated that even where cases were filed by him under the name of the NCLC, in reality, his practice as to bankruptcy cases always was kept separate from those bankruptcy cases filed and administered by the co-owner of the NCLC, Mr. Chandler. Mr. Gjerde then urged the bankruptcy court to avoid prejudicing Mr. Chandler's clients, stating that Mr. Chandler's ability to represent his clients in pending matters has been hampered significantly by the bankruptcy court's termination of Mr. Chandler's electronic filing rights by way of the Contempt Order, with which Mr. Chandler never had been served.

While the vast majority of his clients were, in Mr. Gjerde's view, "pleased with his services," repeated mistakes and actual misconduct by his former assistants made his continued practice impractical, and responding to the "false and unsubstantiated accusations of Trustee Jan P. Johnson, the false accusations of the [UST] and Ms. Antonia G. Darling of the Department of Justice [had] become too onerous a burden to justify continuing to practice before this court."

Notwithstanding the written opposition to the matters to be determined at the April 5 Hearing, no appearance was made by or on behalf of Mr. Gjerde at the April 5 Hearing. At the conclusion of the April 5 Hearing, the bankruptcy court entered civil minutes to the effect that findings of fact and conclusions of law were stated orally on the record, that the Prevailing Party Fees Motion was granted, and that the order was to be prepared by Substitute Counsel. On April 11, 2011, Substitute Counsel filed a supplemental declaration ("Supplemental Declaration") (1) to advise the bankruptcy court that on April 5, 2011, two cashier's checks were delivered to her office - one in the amount of $2,000 and one in the amount of $3,000, the remitter of both having been Mr. Chandler; and (2) to support, as directed by the bankruptcy court at the April 5 Hearing, additional attorneys fees and costs incurred between the period March 5, 2011 and April 5, 2011.

On April 14, 2011, the bankruptcy court entered an order ("Prevailing Party Fee Order") "pursuant to [§ 105(a)] and [the] court's inherent authority to prevent abuse," granting the Prevailing Party Fees Motion and requiring Mr. Gjerde and the NCLC to pay the Mickelsens the sum of $10,072.62 in addition to the $2,000 previously ordered disgorged in the Minute Order. Recognizing the $3,000 paid on April 5, 2011, the Prevailing Party Fee Order directed that Mr. Gjerde and the NCLC remit, forthwith, the remaining balance due of $7,072.62 to Substitute Counsel.

On April 18, 2011, the bankruptcy court entered a civil minute order which denied Mr. Gjerde's Motion for Reconsideration

-19-

("Fourth Civil Minute Order").

On April 28, 2011, Mr. Gjerde filed his document entitled Motion for Stay of Attorney Fee Award, Request to Have Online Access Reinstated Pending Appeal ("Stay Motion"). Mr. Gjerde contended that the April 5 Hearing should not have proceeded without the presence of either himself or his attorney, Mr. Pearson, in light of the notation on the April 4 pre-hearing disposition calendar which stated that no appearance was necessary. He asserted he was deprived of due process when the court conducted the April 5 Hearing because, in reliance on the "posting of no appearance" he "made plans to appear in another court." He asserted that he was prejudiced by what he considered the "late filings" of the UST Declaration and the Chapter 13 Trustee Declaration. Mr Gjerde contended that the fee award was unconscionable where it was for an amount more than five times the amount of the disgorgement itself.

A substantial portion of the Stay Motion is incomprehensible. Mr. Gjerde noticed the hearing on the Stay Motion for June 21, 2011. Before the hearing could take place, Mr. Gjerde filed, on May 9, 2011, a notice of appeal ("First Appeal"), stating that he was appealing the bankruptcy court's order entered April 18, 2011, and all interlocutory orders that gave rise to that order, including but not limited to the Minute Order, the Contempt Order, and the Prevailing Party Fee Order. The Notice of Appeal was dated April 21, 2011.

The bankruptcy court transmitted the First Appeal to this panel on May 11, 2011, and the First Appeal was assigned BAP No. EC-11-1227. On May 13, 2011, our motions panel issued a

-20-

"Notice of Deficient Appeal and Impending Dismissal" ("BAP Deficiency Notice") on the basis that the First Appeal was untimely, having been filed more that fourteen days after entry of the Fourth Minute Order, which denied Mr. Gjerde's motion for reconsideration. The BAP Deficiency Notice required that Mr. Gjerde, within fourteen days, provide an adequate legal explanation as to why the First Appeal should not be dismissed. See Docket #3 in BAP Case No. EC-11-1227. On June 16, 2011, the panel received from the bankruptcy court a notice indicating that Mr. Gjerde had failed to file a designation of record, a statement of issues, a reporter's transcript, and/or a notice regarding the transcript. In addition, the notice indicated Mr. Gjerde had not paid the filing fee for the First Appeal. See Docket #6 in BAP Case No. EC-11-1227. On June 20, 2011, our motions panel dismissed the First Appeal (1) for non-payment of the appeal filing fee, and (2) for lack of jurisdiction, noting that Mr. Gjerde had failed to respond to the BAP Deficiency Notice. See Docket #7 in BAP Case No. EC-11-1227.

On June 27, 2011, Mr. Gjerde filed a motion for reconsideration of the dismissal order entered in the First Appeal. See Docket #8 in BAP Case No. EC-11-1227. In that motion, Mr. Gjerde asserted he had been unable to file the First Appeal properly because the Contempt Order entered January 10, 2011 "made it impossible to file anything with the court in any proper fashion." He also asserted that prior attempts to file the First Appeal had been rejected by the bankruptcy court on two separate occasions. On August 1, 2011, the motions panel entered a limited remand to the bankruptcy court to issue findings of

fact regarding the timeliness of the notice of appeal that initiated the First Appeal. See Docket #14 in BAP Case No. EC-11-1227.

On remand, the bankruptcy court conducted an evidentiary hearing on the issue of whether Mr. Gjerde had attempted to file a timely notice of appeal that had been rejected by the Clerk of the Bankruptcy Court ("Court Clerk"). The bankruptcy court determined that neither Mr. Gjerde nor his paralegal, Shaun Smith, were credible witnesses. Each testified he had received a notice from the Court Clerk returning a notice of appeal tendered through the mail on April 26, 2011, yet neither could produce the writing to evidence this communication from the Court Clerk or the envelope in which it had been mailed. In contrast, a deputy Court Clerk testified regarding the bankruptcy court's internal procedure for returning documents that were tendered but not accepted for filing. This procedure included (1) preparation of a memorandum to accompany the document returned, and (2) notation of the memorandum on the court's administrative docket. The administrative docket in the case reflected that no such memorandum had been prepared.

The bankruptcy court found that the notice of appeal was not tendered to the Court Clerk until May 9, 2011, and that it was accepted for filing on that date. The bankruptcy court also noted that Mr. Gjerde failed to appear at the June 21, 2011 hearing he had set on his Stay Motion regarding the Prevailing Party Fee Order. As a consequence, the bankruptcy court denied the Stay Motion and awarded $627.00 to Substitute Counsel, who prepared for and attended the hearing on Mr. Gjerde's Stay

-22-

Motion. That order was entered July 8, 2011, and was never appealed.

Based on the findings of the bankruptcy court, the motions panel denied Mr. Gjerde's motion for reconsideration of the order dismissing the First Appeal for lack of jurisdiction based on an untimely filed notice of appeal. See Docket #21 in BAP Case No. EC-11-1227. The motions panel thereafter denied Mr. Gjerde's request for certification of the appeal directly to the Ninth Circuit Court of Appeals. See Docket #24 in BAP Case No. EC-11-1227.

These background facts are recited here to make clear that no effective appeal was taken from any order of the bankruptcy court in the Mickelsen case entered on or before April 18, 2011, and that all such orders are final orders.

B. Facts Relating to the Current Appeals.

Currently before the panel are ten orders entered by the bankruptcy court on or after October 25, 2011. Mr. Gjerde is the appellant in three of the appeals. Mr. Chandler is the appellant in the remaining seven appeals. We now turn to the facts relating to these appeals.

Additional Facts

Mr. Chandler came to the attention of the UST indirectly as a result of a new complaint against Mr. Gjerde. In January 2011, the UST was contacted by Kimberley Jorgensen, one of the debtors in Case No. 10-43436-E13L, with a complaint that her bankruptcy case had been dismissed because her attorney, Mr. Gjerde, had failed to perform the necessary services to maintain her case. Ms. Jorgensen had located a new attorney, but needed her records

-23-

back as well as the money she had paid for Mr. Gjerde's representation. Neither Mr. Gjerde nor his law office was responding to her requests for her records and the return of attorneys fees paid to Mr. Gjerde. In verifying the dismissal of Ms. Jorgensen's case on PACER, the UST noted that Mr. Chandler, not Mr. Gjerde, was the attorney of record in the case, despite the fact that Ms. Jorgensen hired Mr. Gjerde and paid Mr. Gjerde $3,500 with her credit card. Ms. Jorgensen further advised the UST that neither she nor her husband had ever met with Mr. Chandler before their case was filed, nor had they signed any of the documents filed in the case.

The UST faxed a letter to Mr. Chandler on January 24, 2011, requesting that he fax to the UST copies of "all the wet signatures in the case" by the close of the next business day, and that he deliver the originals to the UST within three working days. Mr. Chandler sent no return fax; nor did he respond to the UST's telephone messages of January 26 and January 28, 2011, or to her email communication of February 1, 2011. As of March 16, 2011, Mr. Chandler had not responded to any attempt by the UST to obtain the wet signatures for the documents filed in the Jorgensens' case.

In the February 1, 2011 email communication, the UST advised Mr. Chandler that, as an attorney associated with the NCLC, the Contempt Order entered in the Mickelsen case prohibited him from filing any bankruptcy cases. Mr. Chandler was advised that if he disputed the Order of Contempt he should challenge it rather than ignore it.

On January 27, 2011, Mr. Chandler filed a chapter 13

petition on behalf of Ben and Kaelyn Dye ("Dye Case"). Although the Dyes failed to appear at their § 341(a) meeting on March 3, 2011, Mr. Chandler did appear. At that time the Chapter 13 Trustee discussed with Mr. Chandler the fact that the Dye Case had been filed after Mr. Chandler's privilege to file new cases had been revoked through the Contempt Order entered January 10, 2011 in the Mickelsen case. The Chapter 13 Trustee personally handed Mr. Chandler a copy of the Contempt Order at that time because Mr. Chandler asserted he was not aware of the Contempt Order.

Chapter 13 Trustee's Motions and Related Proceedings

On March 12, 2011, nine days after the Chapter 13 Trustee delivered the Contempt Order to Mr. Chandler, Mr. Chandler filed a joint chapter 13 case ("Nieto/Ortiz Case") for Marcus Alonzo Nieto and Hildy Jean Ortiz. Two days later, on March 14, 2011, the Chapter 13 Trustee filed a motion in the Nieto/Ortiz case ("Chapter 13 Trustee Nieto/Ortiz Motion") seeking to have Mr. Chandler's fees disgorged and for the imposition of sanctions against Mr. Chandler, solely on the basis that he had filed the Nieto/Ortiz case in violation of the Contempt Order. On March 16, 2011, the Chapter 13 Trustee filed a motion in the Dye case ("Chapter 13 Trustee Dye Motion") seeking to have Mr. Chandler's fees disgorged and for the imposition of sanctions against Mr. Chandler, solely on the basis that he had filed the Dye case in violation of the Contempt Order. A hearing on both of the Chapter 13 Trustee's motions was scheduled for April 26, 2011 ("April 26 Hearing").

On April 6, 2011, Mr. Chandler filed an opposition to the

-25-

Chapter 13 Trustee Nieto/Ortiz Motion, on the basis that the debtors had hired Mr. Chandler individually, not NCLC. The opposition stated that the "current action," by which it appears Mr. Chandler meant the Nieto/Ortiz Case, had been filed without the approval of either the debtors or Mr. Chandler. Mr. Chandler stated that an unnamed assistant in his office, an "independent contractor" since terminated, had filed the petition without the debtors' signatures and without presenting the documents to Mr. Chandler for approval or direction. The "prayer" in the opposition requested that the court deny the Chapter 13 Trustee Nieto/Ortiz Motion, that the debtors be permitted to proceed in the case "with their chosen attorney," and that a different trustee be appointed "to avoid any potential prejudice against Debtors." (Emphasis added.) Mr. Chandler filed a declaration in support of the Opposition, in which he chronicled a history of improper actions taken by two unnamed assistants over the course of more than six months. Mr. Chandler denied that he willfully had violated the Contempt Order, complaining that he did not have adequate due process notice of the proceedings leading to the entry of the Contempt Order. Nevertheless, having learned of the Contempt Order on March 3, 2011, he "would have sought the permission of the presiding judge" before filing the Nieto/Ortiz Case, "if [he] had been given the opportunity to review and approve the case before it was filed."

On April 13, 2011, Mr. Chandler filed with the bankruptcy court an "Application for Reinstatement of Filing Privileges"

("Chandler Application"),[4] reciting that on March 16, 2011, the bankruptcy court had revoked his filing privileges based on the Contempt Order against Mr. Gjerde and the NCLC. Mr. Chandler did not attach to the Chandler Application a copy of the March 16, 2011 action of the bankruptcy court from which he sought relief; nor does it appear anywhere in the record before the panel.[5]

In his declaration incorporated into the Chandler Application, Mr. Chandler faulted multiple unnamed employees for any and all filing problems. He asserted that he and Mr. Gjerde

---

[4] The Chandler Application was not filed with any caption or in any particular case.

[5] The Chandler Application appears to relate to four identical orders entered by the bankruptcy court on April 6, 2011, in four separate cases: (1) Joy Lynn Tabura, Case No. 11-23433-C-7; (2) Sally Rose Kremere, Case No. 11-23434-C-7; (3) Diane R. Britton, Case No. 11-23435-C-7; and (4) Sergy R. Lakhno, Case No. 11-23436-C-7. Each order is entitled "Order on Order to Show Cause re Dismissal." The text of each order reads in its entirety:

> This is a motion to dismiss a case where the filing fee of $299 was not paid. Debtor's counsel, [NCLC], appeared and urged the case be dismissed as a duplicate of another case. The case shall be dismissed. The filing fee, however, remains due as a post-petition debt in the duplicate case. Moreover, James C. Chandler, Esq., and his colleague Sean P. Gjerde, who have practiced law under the name [NCLC], have been barred by this court from electronic filing privileges for the reasons stated orally on the record April 5, 2011, in the case In re Mickelsen, No. 09-42649-C-7. The filing privileges of Mr. Chandler, Mr. Gjerde, and [NCLC], will not be eligible for consideration of reinstatement unless and until the filing fee in this case has been paid.
>
> SO ORDERED.

-27-

always had maintained separate bankruptcy practices even while jointly using the NCLC name. He further asserted that effective January 1, 2011, his staff had been directed to file all of his new bankruptcy cases in the Eastern District of California reflecting his affiliation with the Law Offices of James P. Chandler, not with the NCLC.

Mr. Chandler conceded at oral argument that he never made any attempt to obtain a hearing on the Chandler Application, or that his filing privileges ever were reinstated despite his assertion in the Chandler Application that he had paid the $1,196 to cover unpaid filing fees in four cases apparently identified in the March 16, 2011 action. To the extent the March 16, 2011 action of the bankruptcy court was an order, Mr. Chandler took no appeal from that order.

The Bankruptcy Court's Order to Show Cause

At the April 26 Hearing, at which Mr. Chandler was present, the bankruptcy court continued proceedings on the Chapter 13 Trustee motions to June 22, 2011 ("June 22 Hearing"). Following the April 26 Hearing, the bankruptcy court issued an Order to Show Cause ("April 27 Show Cause Order") directing both Mr. Gjerde and Mr. Chandler to appear at the June 22 Hearing and show cause why they should not be sanctioned pursuant to Rule 9011 for filing petitions without first obtaining client signatures. The April 27 Show Cause Order also consolidated the proceedings on both motions of the Chapter 13 Trustee and set a discovery schedule.

On May 3, 2011, the Chapter 13 Trustee propounded discovery requests to Mr. Gjerde and to Mr. Chandler. When neither

-28-

Mr. Gjerde nor Mr. Chandler provided responses to the discovery requests, other than to serve objections, the Chapter 13 Trustee filed a motion on June 14, 2011, to compel discovery ("Discovery Motion") pursuant to Civil Rule 37 and set it to be heard with other pending matters at the June 22 Hearing.

On May 18, 2011, Mr. Gjerde filed a motion to strike ("Gjerde Motion to Strike") the April 27 Show Cause Order on the basis that it violated Rule 9011. In effect, he asserted that the April 27 Show Cause Order served to join him improperly as a party to the Chapter 13 Trustee motions in the Nieto/Ortiz and Dye cases.

The June 22 Hearing

Both Mr. Chandler and Mr. Gjerde appeared at the June 22 Hearing. The bankruptcy court denied Mr. Gjerde's Motion to Strike after reading the April 27 Show Cause Order into the record and establishing through Mr. Gjerde's testimony under oath that he had received and read the April 27 Show Cause Order.

In defending the Discovery Motion, Mr. Chandler asserted that in light of the fact that the Chapter 13 Trustee motions raised the issue of contempt, he had requested representation from his insurance carrier that had not yet been provided. He further asserted he simply had not had sufficient time to gather the documents requested, in part because of a serious back injury. He also complained that the Discovery Motion was filed on shortened notice that gave him insufficient time to respond.

Mr. Gjerde also asserted that he had been attempting to obtain representation through his insurance carrier. Mr. Gjerde complained about needing to produce "wet signatures" for "every

-29-

single last file." He further asserted that the Bankruptcy Code did not authorize a trustee to request the wet signatures, although he did concede that the bankruptcy court could make the request. Mr. Gjerde requested an additional four weeks to locate all of his files.

The discovery propounded by the Chapter 13 Trustee also requested identification of the employees whom Mr. Chandler and Mr. Gjerde were blaming for improper filings. Mr. Chandler and Mr. Gjerde had objected to providing that information, citing the need to protect the privacy of third parties and their own payroll matters. The bankruptcy court determined it was appropriate to redact any social security information, but ruled that the Chapter 13 Trustee was entitled to learn the names of the persons accused of filing cases without authority and to depose them, if appropriate.

The bankruptcy court set a further hearing for July 25, 2011 ("July 25 Hearing") to take evidence on an award of sanctions under Civil Rule 37(a)(5). Because of the lack of discovery, the hearing on the Chapter 13 Trustee motions and the April 27 Show Cause Order were continued to the same date.

UST's Sanctions Motion

On June 14, 2011, the UST filed its Motion for Order of Civil Contempt and Sanctions ("UST Sanctions Motion") against both Mr. Gjerde and Mr. Chandler for (1) violating the Order of Contempt, and (2) violating LBR 9004-1(c)(1)(C), which provides:

> All pleadings and non-evidentiary documents shall be signed by the individual attorney for the party presenting them, or by the party involved if that party is appearing in propria persona. Affidavits and certifications shall be signed by the person offering

-30-

the evidentiary material contained in the document. The name of the person signing the document shall be typed underneath the signature.

(1) <u>Signatures on Documents Submitted Electronically</u>

. . .

(C) <u>The Use of "/s/ Name" or a Software Generated-Electronic Signature</u>. The use of "/s/ Name" or a software-generated electronic signature on documents constitutes the registered user's representation that an originally signed copy of the document exists and is in the registered user's possession at the time of filing.

The UST Sanctions Motion was filed in the Mickelsen case, notwithstanding that the case at issue involved debtors Michael G. Peters and Jennifer L. Peters.[6]  In particular, the UST alleged in the UST Sanctions Motion that three cases were filed by or on behalf of Mr. Gjerde, Mr. Chandler, and/or the NCLC as follows:

The Peters hired Mr. Gjerde to file a chapter 13 case for them in May of 2010.  The Peters met with Mr. Gjerde on May 4,

---

[6]  The Mickelsen case had been closed by the court on November 10, 2010.  On June 15, 2011, the UST filed a motion to reopen the Mickelsen case on the basis that further proceedings were necessary on the Contempt Order previously entered in that case.  The bankruptcy court entered an order reopening the Mickelsen case on June 17, 2011, and an amended order reopening the case on June 24, 2011 ("Amended Reopening Order") in order to clarify that no trustee need be appointed in the reopened case. On July 7, 2011, Mr. Gjerde filed a notice of appeal ("Second Appeal") from the Amended Reopening Order, on the basis that the Mickelsen case currently was with the Ninth Circuit Court of Appeals.  The Second Appeal, BAP No. EC-11-1363, was dismissed by our motions panel on October 11, 2011, because Mr. Gjerde had failed to comply with the briefing schedule issued on July 19, 2011, and also had failed to respond to the panel's conditional order of dismissal relating to the delinquent brief.  The motions panel further noted that the Second Appeal was interlocutory and determined that leave to continue the appeal was not warranted.

-31-

2010, and he agreed to represent them. The Peters paid NCLC $1,000 by credit card on that date, and on September 30, 2010, wrote a check to Mr. Gjerde in the amount of $1,274. The Peters also provided Mr. Gjerde a post-dated check for the balance of his fees, which he deposited prior to its date with the result that it was returned for insufficient funds. The Peters replaced that check with cash. In total Mr. Peters believes he paid $3,226 plus the filing fee.

The Peters' first case ("Peters I") was filed by Mr. Gjerde on October 21, 2010, but was dismissed because of the inadequacy of the unconfirmed plan. In particular, the Chapter 13 Trustee filed both an objection to confirmation and a motion to dismiss, neither of which Mr. Gjerde addressed. Peters I was dismissed on March 11, 2011. The Peters' second case ("Peters II") was filed on March 14, 2011, after the Contempt Order had been entered, in the face of a pending foreclosure. Peters II was filed by Mr. Chandler, not by Mr. Gjerde or the NCLC. When Mr. Chandler filed Peters II, he had not met with the Peters, nor had he obtained the Peters' signatures on the Peters II petition in violation of LBR 9004-1. Peters II was dismissed April 1, 2011, after Mr. Chandler failed to file missing documents in the case.

After Peters II was filed, the Chapter 13 Trustee Dye Motion was filed, seeking to sanction Mr. Chandler for filing new cases in violation of the Contempt Order. Therefore, Mr. Chandler did not file the Peters' third case ("Peters III"). Instead, the documents for Peters III were prepared by NCLC, and the documents were filed with the court on April 13, 2011, by NCLC's paralegal,

Shaun Smith. The Peters assert they did sign the petition for Peters III before it was filed. Unbeknownst to the Peters, the Peters III petition listed the Peters as filing in pro per. In his affidavit in support of the UST Sanctions Motion, Mr. Peters stated that when Peters III was filed, he and his wife still believed they were being represented by Mr. Gjerde. They confirmed with Mr. Gjerde's office that he would be representing them at the § 341(a) meeting in Peters III. It was at that § 341(a) meeting that the Peters realized they were unrepresented. Although Mr. Gjerde appeared at the § 341(a) meeting, he took the questionnaire the UST had given the Peters as debtors not represented by counsel, he filled in the space for attorney compensation to reflect the Peters had paid no fees to him, and he had the Peters sign the questionnaire. The Chapter 13 Trustee then refused to allow Mr. Gjerde to represent the Peters at the § 341(a) meeting because he was not listed as counsel of record.

On June 22, 2011, Mr. Gjerde filed a request that the UST Sanctions Motion be dismissed on the basis that it was filed in violation of LBR 8020-1. In essence, Mr. Gjerde asserted that the bankruptcy court was without jurisdiction over the Mickelsen case, or any matter filed in that case, so long as the First Appeal was pending. Mr. Gjerde filed an alternative pleading on the same date, through which he demanded a jury trial and appointment of counsel, pursuant to Fed. R. Crim. P. 42, if the UST Sanctions Motion were allowed to proceed.

The hearing on the UST Sanctions Motion was scheduled for July 25, 2011 ("July 25 Hearing"), at the same time as the

-33-

Chapter 13 Trustee motions, the Discovery Motion, and the court's April 27 Show Cause Order.

### The July 25 Hearing

Mr. Chandler did not appear at the July 25 Hearing. As a consequence, the bankruptcy court entered default against him on all pending matters, i.e., the Chapter 13 Trustee Nieto/Ortiz Motion, the Chapter 13 Trustee Dye Motion, the Discovery Motion, the UST Sanctions Motion, and the April 27 Show Cause Order.

Mr. Gjerde was represented at the July 25 Hearing by Tom Johnson. Mr. Johnson advised the bankruptcy court that in June 2010, Mr. Gjerde had been indicted in a criminal matter involving his law practice and mortgage fraud. Although Mr. Johnson had begun representing Mr. Gjerde while Mr. Gjerde was under investigation prior to the indictment, he only recently had been asked to represent Mr. Gjerde in the bankruptcy court matters. Because the discovery requests involved matters potentially related to the federal indictment, Mr. Johnson asked for additional time to evaluate the discovery requests to protect Mr. Gjerde from possible self-incrimination. Although skeptical that the bankruptcy court matters could impact Mr. Gjerde's rights with respect to the federal indictment, where the actions concerned in the indictment took place before June 2010 and the matters before the bankruptcy court took place beginning after the Contempt Order was entered in January 2011, the bankruptcy court nevertheless granted Mr. Gjerde a further continuance and set the evidentiary hearing for September 8, 2011 ("September 8 Hearing").

/ / /

-34-

The September 8 Hearing

Mr. Johnson's appearance for Mr. Gjerde at the September 8 Hearing was limited to the Chapter 13 Trustee Nieto/Ortiz Motion and the Chapter 13 Trustee Dye Motion. Mr. Gjerde represented himself with respect to the other matters.[7]

Once again Mr. Johnson requested a stay of the matters in bankruptcy court, this time pending resolution of Mr. Gjerde's trial in the federal case, which was then set to commence on January 23, 2012. The UST and the bankruptcy court expressed concern as to continuing harm to the public in the event Mr. Gjerde and/or the NCLC still were filing bankruptcy cases. The bankruptcy court continued all hearings to October 19, 2011 ("October 19 Hearing"), to permit the parties to determine whether a stay of the proceedings would harm the public.

The October 19 Hearing.

At the October 19 Hearing, Kristy Kellogg "stood in" for Mr. Johnson, who was unavailable because of a jury verdict just received in a pending state court matter that required his attendance. Ms. Kellogg stated that Mr. Johnson had filed a substitution of counsel earlier in the day, and that she had a written statement from Mr. Gjerde requesting that the bankruptcy court allow Mr. Johnson to withdraw as his attorney of record, and permitting Mr. Gjerde to represent himself in future matters. Finally, when asked by the bankruptcy court where Mr. Gjerde was, Ms. Kellogg stated: "I was informed that Mr. Gjerde was not

---

[7] These matters included the UST's Sanctions Motion and the evidentiary hearing on the remand from the First Appeal.

going to be present at the hearing today." Colloquy with counsel established that Mr. Gjerde had clearly signaled his intent not to appear at any future hearings. In light of that intent, the bankruptcy court proceeded on all matters pending against Mr. Gjerde.

The record of the October 19 Hearing reflects that the bankruptcy court had ordered a stay contingent on Mr. Gjerde placing on his website and all advertisements a notification that he was not allowed to accept any new cases for filing without prior approval of the bankruptcy court. The UST reported that Mr. Gjerde had made no such disclosure on his website.

The bankruptcy court admitted exhibits which established the amounts paid to Mr. Gjerde and/or the NCLC by the debtors in the Peters, Dye, and Nieto/Ortiz cases, and took testimony from the UST and counsel for the Chapter 13 Trustee on their attorneys fees. Thereafter, the bankruptcy court entered judgments on all matters, and these appeals followed:

Nieto/Ortiz -

Mr. Gjerde and Mr. Chandler, identified as doing business as the NCLC, were ordered jointly and severally to disgorge $3,000 to the debtors. This judgment is before the panel as EC-11-1607 on Mr. Gjerde's Notice of Appeal and as EC-11-1643 on Mr. Chandler's Notice of Appeal.

Mr. Gjerde and Mr. Chandler, identified as doing business as the NCLC, were ordered jointly and severally to pay $19,500 to the Chapter 13 Trustee as the cost of "additional professional services occasioned by their intentional civil contempt." This judgment is before the panel as EC-11-1619 on Mr. Gjerde's Notice

-36-

of Appeal and as EC-12-1015 on Mr. Chandler's Notice of Appeal.

<u>Dye</u> -

Mr. Gjerde and Mr. Chandler, identified as doing business as the NCLC, were ordered jointly and severally to disgorge $2,000 to the debtors. This judgment is before the panel as EC-11-1641 on Mr. Chandler's Notice of Appeal.

Mr. Gjerde and Mr. Chandler, identified as doing business as the NCLC, were ordered jointly and severally to pay $19,500 to the Chapter 13 Trustee as the cost of "additional professional services occasioned by their intentional civil contempt." This judgment is before the panel as EC-12-1016 on Mr. Chandler's Notice of Appeal.

<u>Peters</u> -

Mr. Gjerde and Mr. Chandler, identified as doing business as the NCLC, were ordered jointly and severally to disgorge $2,274 to the debtors. This judgment is before the panel as EC-12-1018 on Mr. Chandler's Notice of Appeal.

<u>Mickelsen</u> -

Mr. Gjerde and Mr. Chandler, identified as doing business as the NCLC, were ordered jointly and severally to pay $16,020 to the Chapter 13 Trustee as the cost of "additional professional services occasioned by their intentional civil contempt." This judgment is before the panel as EC-11-1613 on Mr. Gjerde's Notice of Appeal and as EC-12-1017 on Mr. Chandler's Notice of Appeal. However, it appears that this judgment was amended by the bankruptcy court on October 27, 2011 to reflect that the appropriate payee was the UST rather than the Chapter 13 Trustee. This amended judgment is before the panel as EC-12-1019 on

Mr. Chandler's Notice of Appeal.

## II.   JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUES

The broad issue before us is whether the bankruptcy court abused its discretion when it entered the default judgments now on appeal.  However, two preliminary issues exist.  The first is whether the panel may consider appeals from default judgments where no motions to set aside either the entry of default or the entry of the default judgment were first brought before the bankruptcy court.  The second is whether Mr. Gjerde and/or Mr. Chandler have waived the issues on appeal.

## IV.   STANDARDS OF REVIEW

A trial court's decision to enter a default judgment is reviewed for an abuse of discretion.  See Estrada v. Speno & Cohen, 244 F.3d 1050, 1056 (9th Cir. 2001).  "We review sanctions and the terms of a disciplinary order for abuse of discretion." In re Nguyen, 447 B.R. 268, 276 (9th Cir. BAP 2011)(en banc). The bankruptcy court's choice of sanction is reviewed for abuse of discretion.  U.S. Dist. Ct. for E.D. Wash. v. Sandlin, 12 F.3d 861, 865 (9th Cir. 1993).

We apply a two-part test to determine whether the bankruptcy court abused its discretion.  United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).  First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested.  Id.  Then, we review the

-38-

bankruptcy court's fact findings for clear error. Id. at 1262 & n.20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id.

We may affirm the bankruptcy court's ruling on any basis supported by the record. See, e.g., Heilman v. Heilman (In re Heilman), 430 B.R. 213, 216 (9th Cir. BAP 2010); FDIC v. Kipperman (In re Commercial Money Center, Inc.), 392 B.R. 814, 826-27 (9th Cir. BAP 2008); see also McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

Generally, we do not consider an issue that was raised but thereafter conceded by the Appellant in the trial court. See CDN, Inc. v. Kapes, 197 F.3d 1256, 1258-59 (9th Cir. 1999) ("The withdrawal of an objection is tantamount to a waiver of an issue for appeal.").

## V. DISCUSSION

A. Mr. Gjerde's Appeals: EC-11-1607, EC-11-1613, EC-11-1610

We begin our examination of the record with a clarification of what we will not be deciding in these appeals. The validity of the Contempt Order is not before us. It is a final order that was not timely appealed by Mr. Gjerde, as evidenced by the dismissal of his First Appeal. Consequently, we do not address the issues Mr. Gjerde raised in his Opening Brief on Appeal that relate to the bankruptcy court's jurisdiction to enter the Contempt Order or whether Mr. Gjerde was denied due process by the entry of the Contempt Order.

What is left are the issues relating to the bankruptcy

court's enforcement of the Contempt Order, which were wrapped together with the bankruptcy court's rulings relating to other pleadings which sought the imposition of sanctions on other bases, in particular, Mr. Gjerde's failure to comply with LBR 9004-1(c)(1)(C). We are compelled to observe that any argument Mr. Gjerde makes that he was not apprised of the actions to be taken against him are specious. He contested his joinder to the Chapter 13 Trustee Nieto/Ortiz Motion and the Chapter 13 Trustee Dye Motion. The April 27 Show Cause Order and the UST Sanctions Motion both were explicitly addressed to the issue of "wet signatures," and the Discovery Motion was brought in part because of Mr. Gjerde's failure to produce "wet signatures."

At the June 22 Hearing, the bankruptcy court put Mr. Gjerde under oath to establish that he had actual knowledge that the proceedings related to the April 27 Show Cause Order went to the issue of "wet signatures."

THE COURT: You have an order from me dated April 27?

MR. GJERDE: Yes.

. . .

THE COURT: Would it surprise you to know that the only order issued on April 27 is the order that you're looking at?

MR. GJERDE: That would surprise me, your Honor. I thought there was an order to show cause that talked about wet signatures. That's what I recall seeing. But I don't see where it says wet signature. So I'm somewhat confused, your Honor. But, yeah, I did receive an order to show cause.

THE COURT: You don't see any reference to wet signatures?

THE WITNESS: No, I don't, your Honor.

THE COURT: Would it surprise you to know that page 2,

-40-

lines 7 to 8, contain the clause "notwithstanding that the debtors have not actually signed the petition"?

Tr. of June 22 Hearing at 12:8-13:3.

At the conclusion of the colloquy, the bankruptcy court made the following finding: ". . . I find as fact that Mr. Gjerde has seen [the April 27 Show Cause Order], and I so conclude." Id. at 14:19-20.

In the end, Mr. Gjerde's own actions preclude us from reviewing the judgments on appeal. Specifically, Mr. Gjerde failed to appear at the ultimate hearing on the proceedings that resulted in the entry of the judgments he has appealed. As noted by the bankruptcy court at the October 19 Hearing: "It appears that it is established (A) that Mr. Gjerde is representing himself and (B) that he does not intend to appear in this court now or in the future in this case." Tr. of October 19 Hearing at 4:20-22. Accordingly, the proceedings that resulted in the judgments were conducted "on a default basis." Id. at 4:24.

In light of Mr. Gjerde's default, the bankruptcy court was entitled to assume as true the facts alleged in the outstanding pleadings, except as to the amount of damages. Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). As it was required to do, before entering the default judgments, the bankruptcy court took evidence as to "damages" in the form of fees paid by Mr. Nieto and Ms. Ortiz, by the Dyes, and by the Peters, and as to the attorneys fees incurred by the Chapter 13 Trustee and the UST based upon the improper conduct of Mr. Gjerde as alleged. The actual damages found by the bankruptcy court constitute an appropriate sanctions amount.

-41-

Only after the default judgments were entered did Mr. Gjerde reassert his interest in the proceedings. Unfortunately, that action, the filing of the appeals, was insufficient to entitle Mr. Gjerde to relief from the default judgments.

First, whether Mr. Gjerde was entitled to relief from the default judgments was a matter within the discretion of the bankruptcy judge in the first instance. Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969). Under Civil Rule 55(c), applicable in bankruptcy contested matters pursuant to Rule 9014(c), the bankruptcy court has discretion (1) to set aside an entry of default "for good cause" and (2) to set aside a default judgment under Rule 60(b). "Relief from a default judgment must be requested by a formal application as required by Rule 60(b)." 10A Wright, Miller & Kane, Fed. Practice and Proc. 2d § 2692 (2010). "Relief under Rule 60(b) ordinarily is obtained by motion in the court that rendered the judgment." 11 Wright, Miller & Kane, Fed. Practice and Proc. 2d § 2865 (2010) (emphasis added). "Motions to vacate default judgments . . . are addressed to the broad equitable discretion of the court where the default was taken." State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1996), cited by Investors Thrift v. Lam (In re Lam), 192 F.3d 1309, 1311 (9th Cir. 1999).

Mr. Gjerde did not seek relief from the default judgments in the bankruptcy court. As an appellate body, our role with regard to a Rule 60(b) motion is limited to reviewing the bankruptcy court's decision to determine if there was an abuse of discretion. First Beverages, Inc. v. Royal Crown Cola Co., 612 F.2d 1164, 1172 (9th Cir. 1980). "An appeal to this court

-42-

cannot be used as a substitute for the timely procedure set forth by Rule 60(b)." Rohauer v. Friedman, 306 F.2d 933, 937 (9th Cir. 1962).

The Ninth Circuit, when faced with a defaulted party who appealed a default judgment rather than seek relief from the trial court under Rule 60(b), dismissed the appeal, stating:

> Federal courts are not run like a casino game in which players may enter and exit on pure whim. A defaulted party may not re-enter litigation, particularly on appeal, on sheer caprice. It must follow proper procedure to set aside the default.

In re Lam, 192 F.3d at 1311. Accord Consorzio del Prosciutto v. Domain Name Clearing, 346 F.3d 1193, 1195 (9th Cir. 2003)(appeal of default judgment dismissed where defaulting party had not first moved the trial court to set aside entry of default or relief from the default judgment).

Second, we deem the issues raised on appeal to have been waived by Mr. Gjerde when he voluntarily absented himself from the October 19 Hearing. CDN, Inc. v. Kapes, 197 F.3d at 1258-59 (9th Cir. 1999).

B.    Mr. Chandler's Appeals:  EC-11-1641, EC-11-1643, EC-12-1015, EC-12-1016, EC-12-1017, EC-12-1018, EC-12-1019

Our analysis of the viability of Mr. Chandler's appeals is similar to that stated above for Mr. Gjerde's appeals. We note that Mr. Chandler asserted somewhat vigorously that the Contempt Order was not enforceable against him where he was not a party to the proceedings which led to its entry. In the end, Mr. Chandler abandoned this position when he chose to absent himself from all further proceedings beginning with the July 25 Hearing, at which hearing the bankruptcy court noted Mr. Chandler's default on the

-43-

record. Because Mr. Chandler did not seek relief from the bankruptcy court from the entry of default or the default judgments subsequently entered against him, we have no basis upon which to consider the issues Mr. Chandler raised in the seven appeals pending before this panel. Further as an appellate court, we will not consider an issue explicitly abandoned by an appellant in the trial court proceedings.

## VI. CONCLUSION

Consistent with Ninth Circuit precedent, we DISMISS each of these appeals.